UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **POLYONE CORPORATION,** | ) | **CASE NO.1:14CV0078** |
| | ) | |
| Plaintiff, | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **TEKNOR APEX COMPANY,** | ) | **OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Teknor Apex Company's Motion to Dismiss (ECF # 11). For the following reasons, the Court grants Defendant's Motion.

Plaintiff's Complaint alleges Plaintiff PolyOne Corp. ("PolyOne"), a specialized polymer materials company operating on four continents, developed and sells a technology for making polyvinyl chloride custom injection molding polymer compounds. Defendant Teknor Apex Company ("Teknor") misappropriated this technology and sells a competing product, resulting in damages to Plaintiff. Plaintiff is an Ohio company based in Avon Lake, Ohio and Defendant is a Delaware company based in Rhode Island. Plaintiff alleges the Court has diversity jurisdiction based on the parties' residences and the value of the claims exceed $75,000. Plaintiff further alleges the Court has personal jurisdiction over Defendant

because it sells the offending product in Ohio.

## Background Facts

According to PolyOne, its polyvinyl chloride polymer (CIM compound) is used to manufacture plastic parts by injection molding.  It is used largely in the appliance market.  The CIM technology includes compound formulations, manufacturing procedures and scientific technical information for the compounds.  PolyOne and its predecessor, The Geon Company, maintained this technology as a trade secret and any employee that needed to know the trade secret was required to sign a confidentiality agreement, as were third-parties to whom Plaintiff disclosed the secret.  The trade secret is not generally known in the industry and it is not readily ascertainable by inspecting or testing the product.

In 1996, Geon formed a joint venture with Singapore Polymer Corp., ("SPC") called SPCGEON, wherein Geon would disclose the technology to SPC so that SPC could manufacture the product to sell in the Asian markets.  In 2001, Defendant Teknor Apex purchased SPC and changed its name to Teknor Apex Asia Pacific.  In 2003, PolyOne and SPC assigned the joint venture's rights and obligations under the 1996 agreement to a wholly owned subsidiary of PolyOne called PolyOne Singapore.

Since 1996, Geon, PolyOne, SPC, SPCGEON and PolyOne Singapore executed several agreements related to the trade secret technology.  At least one of these agreements restricts SPC from disclosing the technology to others or using it for itself, aside from what was agreed, and obligated SPC to keep the technology secret.  As a successor to Geon, PolyOne owns all rights to the technology.

Upon information and belief, Plaintiff alleges Teknor misappropriated the trade secret

technology from SPC and is now selling it in the US and possibly abroad. As a result, several PolyOne customers have switched to Teknor.

Plaintiff alleges claims under Ohio law for trade secret misappropriation, unfair competition and unjust enrichment.

## Defendant's Motion to Dismiss

On February 25, 2014, Teknor filed a Motion to Dismiss, alleging that the license agreement between Geon and SPCGeon licensed the CIM technology to SPCGeon. SPCGeon then sublicensed the CIM technology to SPC to manufacture the compound in 1996. The Sublicense Agreement contains a binding forum selection clause naming Singapore as the forum for litigating all disputes. In Section 10.3 of the Sublicense Agreement ("Agreement"), it reads:

> In relation to any legal action or proceedings arising out of or in connection with this Agreement …, each of the parties hereby irrevocably submits to the exclusive jurisdiction of the courts of the Republic of Singapore.

Geon consolidated with another polymer company in 2000 forming PolyOne. In 2001, Teknor purchased SPC. In 2003, SPC and SPC-Geon, PolyOne Corp and Teknor modified the Sublicense Agreement ("Amendment"). The Amendment specifically incorporated the forum selection clause reaffirming Singapore as the agreed upon forum for any disputes. Pursuant to the recent United States Supreme Court case of *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, ------US------, 134 S. Ct. 568 (2013), Defendant contends the Court must dismiss the case as the parties expressly contracted for a forum in Singapore.

Defendant further argues that if the Court declines to dismiss the action, Plaintiff's

claims for unfair competition and unjust enrichment must be dismissed because they merely reiterate the misappropriation of trade secrets claim and are duplicative.

Plaintiff filed its Opposition brief on April 14, 2014, alleging Teknor's 2012 product has a nearly identical, if not completely identical, formulation to Plaintiff's, including a dummy substrate that serves no purpose in the formulation.

Plaintiff argues Defendant relies on an inapplicable forum selection clause found in an agreement to which neither PolyOne nor Teknor are signatories.  The applicable forum selection clause is found in the Amendment that limits the applicability of the forum selection clause to contractual disputes.  Since no contract claim is alleged, the forum selection clause is not triggered.

Plaintiff further alleges that, even if applicable, the forum selection clause is invalid because it would have the effect of depriving Plaintiff of a fair day in court due to logistical and legal difficulties in litigating in Singapore.

Lastly, Plaintiff alleges public interest factors weigh in favor of rejecting Singapore as the appropriate forum.

On May 15, 2014, Defendant filed its Reply, contending that PolyOne cannot disavow the clear contractual obligation to resolve any legal dispute in Singapore.

**Standard of Review**

The United States Supreme Court recently issued a decision on the weight a district court should give a forum selection clause when considering dismissal or transfer.  In *Atlantic Marine Construction Co. Inc. v. United States District Court for the Western District of Texas, et al.,* 134 S. Ct. 568 (2013), the Supreme Court first held that the proper mechanism

for enforcing a forum selection clause is 28 U.S.C. § 1404(a).

The Supreme Court further held "[w]hen a defendant files such a motion, we conclude, a district court should transfer the case unless extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id*. at 581.  When a valid and enforceable forum selection clause evidences the parties' intent to bring an action in a particular federal district, the forum selection clause must be given "controlling weight in all but the most exceptional circumstances." *Atlantic Marine* at 581.   "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404a motion be denied." *Id.*

The Supreme Court considered the usual analysis of a § 1404 motion to transfer.

> In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations.  Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve "the convenience of parties and witnesses" and otherwise promote "the interest of justice." §1404(a).

In *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, (1988), the Supreme Court outlined the following factors for courts to consider:

> 1) the convenience of parties;
> 2) the fairness of the transfer in light of the forum selection clause;
> 3) the relative bargaining power of the parties to the forum selection clause;
> 4) convenience of witnesses; and
> 5) public interest in systemic integrity and fairness

*Id.* at 29,30.

The existence of a valid forum selection clause changes the above analysis.

5

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which "represents the parties' agreement as to the most proper forum." (Internal citation omitted). The "enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote "the interest of justice," "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." (Internal citations omitted).

*Atlantic Marine*, at 581.

The Supreme Court described three ways the usual venue analysis changes when there exists a valid forum selection clause. First, plaintiff's choice of forum is accorded no weight because plaintiff is presumed to have expressed its desired forum in the forum selection clause. Second, courts cannot entertain arguments on the parties' private interests as those are now deemed to weigh "entirely" in favor of the choice of forum contained in the forum selection clause. Finally, the law of the state wherein the suit was filed, if different from the forum agreed to in a forum selection clause, will not follow the case upon transfer. *Id* at 581-82.

The first question the Court must address, prior to an analysis of the *Stewart* factors, is whether the Singapore forum selection clause applies to the dispute at hand and is valid and enforceable.

Neither party alleges any issues concerning the validity of the forum selection clauses in either the Agreement or the Amendment, nor do the parties allege the clauses are unconscionable or were entered into under duress. In short, the validity and enforceability of the agreements are unchallenged.

Plaintiff relies primarily on its argument that the forum selection clause is inapplicable

6

because the original forum selection clause is inapplicable because neither Plaintiff nor Defendant are signatories to it. Plaintiff contends the Amendment incorporates the forum selection clause from the Agreement but limits its application to contractual disputes concerning the Amendment. Since Plaintiff only alleges tort claims, the disputes do not arise from or concern the parties' agreements, therefore, the forum selection clause is inapplicable.

Defendant argues the Complaint clearly alleges that the duties Teknor has allegedly breached all arise from the underlying contracts. The Complaint alleges: 1) SPC had a duty not to disclose the CIM formula to third parties, 2) SPC disclosed the CIM formula to Teknor and 3) Teknor manufactures and sells CIM molding compounds that incorporate PolyOne's technology Teknor improperly acquired from SPC. All three of the above duties or restrictions were set out in the Agreement and subsequent Amendment. Therefore, all Plaintiff's claims arise from the Agreement and Amendment which requires all disputes be litigated in Singapore.

Upon consideration of the Agreement and Amendment, the Court holds the claims raised by Plaintiff in its Complaint are governed by the forum selection clause contained in Section 10.3 of the Agreement and incorporated by reference into the Amendment. The forum selection clause in the Agreement reads;

> In relation to any legal action or proceedings arising out of or in connection with this Agreement …, each of the parties hereby irrevocably submits to the exclusive jurisdiction of the courts of the Republic of Singapore.

The subsequent Amendment of 2003 reads at Section 14:

> Disputes with respect to the foregoing provisions shall be resolved in accordance with Section 10.3 of the Agreement.

Plaintiff tries to distinguish its claims as having no relation to the Agreement and Amendment but the Court agrees with Defendant that the language of the forum selection clauses encompasses Plaintiff's claims.  First, Geon (predecessor to PolyOne) entered into the joint venture agreement with Singapore based Singapore Polymer Corp ("SPC") so that the new joint venture company SPCGeon could manufacture and sell CIM based compounds in the Asian market.  The Agreement contained the nondisclosure language binding SPC to secrecy.  When, in 2001, Teknor acquired SPC there was a desire amongst the relative parties to continue manufacturing and selling CIM based compounds.  This resulted in the 2003 Amendment to the Agreement which now included PolyOne and Teknor as additional signatories.  This Amendment prohibited Teknor and SPC from making, selling or distributing any CIM molding compounds anywhere in the world for a ten year period.  After the expiration of the contract term (approximately March 2013), Section 12 of the Amendment expressly states:

> ***After the expiry of the Contract Manufacturing Agreement***, both SPC and Teknor and/or their Affiliates are not prohibited from acquiring a controlling equity interest in a third party who owns their own established and proven third party proprietary technology for the manufacture of competing CIM Molding Compounds ("Third Party compounds") which are already being sold in
> significant commercial quantities and after such acquisition of such controlling interest thereafter continuing, whether directly or through such third party manufacturing, promoting marketing and/or selling Third party compounds anywhere in the world; provided that in the Exclusive Territory, such right shall extend only to such third party's existing customers at the time of acquisition of such controlling interest for the ten year period set forth in Section 10 *supra.*
> Following the acquisition of such control1ing interest in such third party, Teknor, SPC, the third party, and/or Affiliate may further develop and improve upon the Third Party technology, ***but under no circumstances may such development utilize any material present in CIM Molding Compounds but not in the Third Party compounds (measured as to the Third Party***

> *Compounds at the time of and prior to such acquisition of such controlling interest), and may not in any manner incorporate, modify or utilize in whole or in part either POLYONE's or SPCGeon's CIM technology as conveyed to SPC under the Agreement and/or the Contract Manufacturing Agreement, or utilize the knowledge, knowhow or resources of any individual having contract at any time with the information conveyed under this Agreement or the Contract Manufacturing Agreement to SPC.* (Emphasis added).

Plaintiff's Complaint alleges:

1) Teknor Apex is now selling CIM compounds... that could only have been manufactured through access to and the use of PolyOne's Technology. (Complaint at 24.)

2) Upon information and belief, SPC disclosed the CIM Technology to Teknor Apex or, alternatively, Teknor Apex misappropriated the CIM Technology from SPC. (Complaint at 25.)

The crux of Plaintiff's Complaint against Teknor is that Teknor is selling competing products using Plaintiff's CIM Technology that Teknor obtained from SPC all the while knowing SPC was obliged to keep the information confidential.  Each of these allegations correspond to contracted for obligations found in the Agreement and Amendment.[1]  The Amendment, to which the parties are all signatories, reaffirms SPC's obligation to maintain the secrecy of Plaintiff's CIM compound, prohibits Teknor from selling competing CIM products for the term of the contract and for an undisclosed period thereafter and prohibits

---

[1] The Amendment's forum selection clause incorporates the broader language of the forum selection clause found in the Agreement.  While the Court holds that the Amendment's language that "disputes concerning these provisions" is broad enough to encompass Plaintiff's claims, the broader language of the Agreement's forum selection clause further expands the scope of the forum selection clause and encompasses all claims.

Teknor from acquiring a third party competitor of PolyOne and disclosing PolyOne's proprietary CIM technology to its newly acquired company. These matters involve "disputes" regarding the provisions of the Amendment, placing them squarely within the ambit of the forum selection clause. The general rule in this circuit is that "regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action." *Tritt v. Category 5 Records, LLC,* 570 F. Supp2d 977, 981 (M.D. Tenn. 2008) citing *Gen. Envtl. Sci. Corp. v. Horsfall,* 1994 WL 228256 at *8 (6th Cir. May 25, 1994). "This rule includes tort or consumer protection claims related to the contract's purpose." *Tritt*, 570 F.Supp.2d at 981. The "provisions" in the Amendment govern SPC's obligations not to disclose PolyOne's CIM Technology and Teknor's recognition of those obligations; Teknor's agreement not to sell CIM molding products for a defined term and defined area and Teknor's and SPC's obligations not to use Polyone's or its employees' knowledge of PolyOne's CIM Technology in products developed by any company subsequently acquired by Teknor or SPC. Therefore, Plaintiff's claims fall within the broad language of the forum selection clause which encompasses any disputes over its provisions.

  Having determined that the forum selection clause encompasses the disputes raised in Plaintiff's Complaint the Court must examine the public factors for enforcing such a clause. In light of the new analysis ordered by the Supreme Court in *Atlantic Marine*, the Court finds the relevant factors militate strongly in favor of transfer. All private interest considerations such as convenience of parties and witnesses and fairness to the parties in light of the forum selection clause are deemed to favor enforcement of the forum selection clause in light of

10

*Atlantic Marine*. Contrary to Plaintiff's arguments, the parties are both sophisticated entities who will not be disadvantaged by the transfer. They willingly sought to enter the Asian markets by purchasing or contracting with companies doing business in Singapore. Finally, the public interest favors Singapore since "the public has a strong interest in applying contracts as they are written." *First Solar, LLC v. Rohwedder, Inc.,* No. 3:04CV7518, 2004 WL 2810105 (N.D.Ohio Dec. 8, 2004).

Therefore, for the foregoing reasons the Court finds the parties bargained for Singapore as the chosen forum to resolve the disputes found in Plaintiff's Complaint. Therefore, the Court dismisses without prejudice Plaintiff's claims.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated: August 25, 2014